**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**RYAN E. MILLER,**                              :

    **Plaintiffs**                    :       **CIVIL ACTION NO. 3:19-0101**

    **v.**                               :             **(JUDGE MANNION)**

**C.O. BORGER, et al.,**                   :

    **Defendants**                  :

**<u>MEMORANDUM</u>**

**I. <u>Background</u>**

    Plaintiff, Ryan E. Miller, an inmate formerly confined at the Schuylkill County Prison, Pottsville, Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983.[1] (Doc. 1). The named Defendants are the following Schuylkill County Prison employees: C/O Borger, C/O Sabol, C/O Rodriguez, C/O Klinger, C/O Rainis, C/O Fritzinger, C/O Ravenzahn, Lieutenant Escalante, Warden Eugene Berdanier and Deputy Warden David Wapinsky. Id. Plaintiff also names Kelly Butler, a licensed practical nurse employed by PrimeCare Medical, Inc., who provides nursing services to inmates at the Schuylkill County Prison. Id. Plaintiff seeks

---

[1] Plaintiff is currently housed at the Benner State Correctional Institution ("SCI-Benner") Bellefonte, Pennsylvania.

1

compensatory and punitive damages for an incident which allegedly occurred on April 16, 2017, wherein Miller asserts that the Correctional Officers violated his Eighth Amendment right to be free from cruel and unusual punishment by using "excessive force". Specifically, Plaintiff alleges excessive use of force against C/O Borger, C/O Sabol, C/O Rodriguez, C/O Klinger, and C/O Rainis for "punching [Plaintiff] and elbowing [him] in the face and body repeatedly while [he] was held by multiple SCP guards during a planned use of force." Id. Additionally, he asserts claims against C/O Fritzinger, C/O Rauenzahn and Lieutenant Escalante for allegedly failing to report the SCP guards and stop the SCP guards from using excessive force and failure to protect and failure to report claims against Lieutenant Escalante, Warden Berdanier and Deputy Warden David Wapinsky. Id. Finally, Plaintiff alleges a failure to train claim against Warden Berdanier. Id.

Presently before the Court is a motion to dismiss filed on behalf of Kelly Butler and remaining Defendants' ("Corrections Defendants) motion to dismiss or for summary judgment. (Docs. 21, 23). For the reasons set forth below, this Court will grant Defendant Butler's motion to dismiss and

2

grant, in part and deny, in part, remaining Defendants' motion to dismiss and for summary judgment.

## II. Standards of Review

### a. Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson,

3

477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce

4

evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v.

5

Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

**b. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief"." Id. at 211 (quoted case omitted).

III.   **Statement of Undisputed Facts**

The Schuylkill County Prison has an inmate grievance procedure. (See Doc. 23-2 at 2). The process first requires the inmate file a grievance

any time within thirty (30) days after the potential grievable event has occurred and submit the grievance to the Deputy Warden, as Grievance Coordinator. Id. A grievance is to be responded to within fifteen (15) working days. Id. An inmate dissatisfied with the response to their grievance has the right to appeal the decision, which must be submitted in writing to the Warden within ten (10) days after the response to the grievance is received. Id. The Warden's decision on the appeal will be final. Id.

On April 17, 2017, Plaintiff filed Grievance No. 985 with the Deputy Warden stating the following:

> On or about 4-16-17 time on or about 4pm to 5pm while locked in my cell G24 the was opened so CO Ranes (sic) could take me to the RHU. I told him no and ran out my cell on to the block. I then stopped and CO Borger grabbed me and CO Sable (sic) grabbed me around the neck from behind and I fell backwards onto CO Stable (sic). Multiple corrections officer then started to use "excessive force" by punching and elbowing me in the face repeatedly stating "knock him out, is he out yet." I stopped resisting once I was on the ground. I even put my hands behind my back to be cuffed but the COs were too worried about punching me and elbowing me to knock me out. I then took my hands and covered my face to stop the CO's from hitting me but they continued. I then put my hands behind my back again and just let the CO's punch me. They kept punching me until they realized my hands were behind my back already. They then handcuffed me and put a spit mask on my face because I was bleeding really bad. Then a CO female (J. Doe) told the other CO's to watch out for the

blood on my face. I was then brought to the RHU on E-11 and there the J. Doe told the COs to take me to medical first to get cleaned up. I was brought to medical and RN Kelly cleaned my wounds and did not take any pictures. When I asked why she told me they didn't have a camera. All was done in the C block camera.

I would like to be awarded $300,000.00 for the beating I took and the damages that were brought towards me. This is defined under the use of "excessive force." And a violation of my 8th Amendment right to be free from "cruel and unusual punishment. My witnesses to these events are as follows: Mike Kanger, Jesse Rautington, Josh Hickey, Robert Poptic, Chris Keer, Victor Green, George Cope, William Kanornicky, Eric Muman. And the block camera. My witnesses to me writing this grievance form and then seeing my injuries are as follows: William Ladlee, Johnathan Dehaan, RN Kelly.

(Doc. 23-3 at 2, Inmate Grievance Form).

On May 1, 2017, Deputy Warden Wapinsky denied Grievance 985 as follows:

Grievance 985 is denied. A thorough review of the incident was conducted by Administration. You were non-compliant with staff's orders. You were combative with staff. After the incident you were seen by medical & cleared to be placed in E-Blk. An appeal of this decision can be filed to Warden Berdanier.

Id. Plaintiff requested an appeal form, which was mailed to him on July 20, 2017. (Doc. 23-3 at 3).

On July 25, 2017, Plaintiff filed an appeal of the denial of his grievance to Warden Berdanier, (Doc. 23-4 at 1), who denied the appeal on August 17, 2017 as follows:

> After a secondary review of the incident of 4/16/17, you created a dangerous incident, not only for yourself, but for the responding officers while they attempted to control you. Not only were you non-compliant, but you were combative towards staff. When given medical treatment you were cleared for placement in E block. I am denying the appeal.

(Doc. 23-4 at 4).

No other grievance was filed by Plaintiff regarding the April 16, 2017 incident.

## IV. Discussion

### A. Exhaustion of Administrative Remedies

Under the PLRA, a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. See 42 U.S.C. §1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the

United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997(e). The exhaustion requirement is mandatory. Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"). Moreover, while Plaintiff was released from prison after filing the above-captioned case (Doc. No. 10), he is still bound by the exhaustion requirement because he has raised claims concerning events that occurred prior to his release. See Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002).

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to §1997e's exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court. Id. Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into

11

federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See e.g., Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Warman, 49 F. App'x at 368.

12

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. Warman, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievance procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'") (citations omitted).

The Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. See Ross v. Blake, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although

officially on the books, is not capable of use to obtain relief." Id. at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation. Id. at 1860.

The Third Circuit recently joined other circuits to hold "that administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." Rinaldi v. United States, 904 F.3d 257, 267 (3d Cir. 2018). To defeat a failure-to-exhaust defense based on such threats, "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." Id. at 269.

14

Finally, failure to exhaust is an affirmative defense that must be pled by the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007). Once defendants present evidence of a prisoner's failure to exhaust, the burden of proof shifts to the inmate to show that exhaustion occurred or that administrative remedies were unavailable. Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018). "Both the [United States] Supreme Court and [the Third Circuit Court of Appeals] have rejected judge-made exceptions to the PLRA." Downey, v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020). District courts may not "excuse [a prisoner's] failure to exhaust." Ross, 136 S. Ct. at 1856 (rejecting a "special circumstance" exception). Likewise, district courts do not have the authority "to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhius v. Reno, 204 F.3d 65, 71 (3d Cir. 2000).

Corrections Defendants argue that Plaintiff has failed to exhaust his administrative remedies with respect to Grievance No. 985.

Initially, they argue that the grievance appeal was untimely, due to Plaintiff's failure to file his appeal with the Warden, within ten (10) days of the May 1, 2017 denial of grievance by the Deputy Warden. (Doc. 25 at

15

18). While the record reveals that Plaintiff's July 25, 2017 appeal was not received until July 27, 2017, it also reveals that Warden Berdanier accepted and addressed Plaintiff's appeal on the merits. Thus, because Plaintiff's appeal was denied at the highest level on the merits and therefore was properly exhausted under the PLRA, the Court will deny Corrections Defendants' motion for summary judgment as to Plaintiff's failure to exhaust his administrative remedies with respect to Plaintiff's excessive force claim and Defendants C/O Rainis, C/O Borger, C/O Sabol, and Nurse Kelly Butler. See Spada v. Martinez, No. 13–4205, 2014 WL 4056924, at *3 (3d Cir. Aug.18, 2014) (" '[T]he exhaustion requirement of the PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority.' ") (quoting Hill v. Curcione, 657 F.3d 116, 225 (2d Cir. 2011)) (citing Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000)).

Corrections Defendants further argue that Plaintiff failed to exhaust his administrative remedies with respect to Defendants C/O Rodriguez, C/O Klinger, C/O Fritzinger, C/O Rauenzahn, Lt. Escalante, Warden Berdanier and Deputy Warden Wapinsky, and the claims raised against them; namely, claims of excessive force, failure to protect, failure to report

or stop, and failure to train. (Doc. 25 at 20). Specifically, Defendants claim that Plaintiff did not name any of these Defendants in Grievance No. 985, nor did he include any of the claims he now raises in the instant action. Plaintiff does not refute this.

The United States Court of Appeals for the Third Circuit has noted that "a Pennsylvania inmate's failure to properly identify a defendant constitute[s] a failure to properly exhaust his administrative remedies under the PLRA." Williams v. Pa. Dep't of Corr., 146 F. App'x 554, 557 (3d Cir. 2005). In the instant case, Plaintiff did not identify Defendants C/O Rodriguez, C/O Klinger, C/O Fritzinger, C/O Rauenzahn, Lt. Escalante, Warden Berdanier and Deputy Warden Wapinsky in Grievance No. 985, and he did not "identify any harm perpetuated by them" in his grievance. Watson v. Wingard, 782 F. App'x 214, 217 (3d Cir. 2019). Thus, Plaintiff failed to exhaust his claims against these Defendants. Defendants, therefore, are entitled to summary judgment with respect to Plaintiff's claims against Defendants C/O Rodriguez, C/O Klinger, C/O Fritzinger, C/O Rauenzahn, Lt. Escalante, Warden Berdanier and Deputy Warden Wapinsky.

17

**B. Personal Involvement**

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under §1983 cannot be premised on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

18

Inmates also do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")). Consequently, any attempt by Plaintiff to establish liability against a defendant solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for §1983 liability); Prvor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

With respect to Defendants Warden Berdanier and Deputy Warden Wapinsky, the Complaint generally contends only that they were aware of the April 16, 2017 incident and did not try to stop or protect Plaintiff.

Based on those vague assertions and the record which reveals the only involvement of Defendants Berdanier and Wapinsky were through

their involvement with Plaintiff's grievances, it is apparent that Plaintiff is attempting to establish liability against these Defendants based upon either their respective supervisory capacities or their review of his institutional grievances. Pursuant to the above discussion, either approach is insufficient for establishing civil rights liability against those Defendants and they are entitled to judgment as a matter of law.

## C. Eighth Amendment Deliberate Indifference

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden Ctv. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Ctv. Corr.

Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347). Assuming arguendo that the Complaint did satisfy the serious medical need threshold, there are no facts asserted which could establish that could support a claim of deliberate indifference.

With respect to the subjective deliberate indifference component, the Supreme Court has established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical

condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").The Court of Appeals for the Third Circuit in Durmer added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. However, where a failure or delay

in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.

Plaintiff has failed to satisfy the deliberate indifference requirement of Estelle. Specifically, with the exception of Nurse Kelly Butler, all of the named Defendants are non-medical defendants. The Complaint acknowledges that Miller was treated by prison medical staff after the April 16, 2017 incident and there is no assertion that any of those Defendant officials delayed or denied any prescribed treatment. Accordingly, entry of dismissal in favor of the non-medical Defendants is appropriate with respect to the claim of deliberate indifference to Plaintiff's medical needs.

As to Nurse Kelly Butler, Plaintiff's exhausted claim regarding Butler states the following:

> I was brought to medical and RN Kelly cleaned my wounds and did not take any pictures. When I asked why she said they didn't have a camera. All was done in the C block camera.

(Doc. 23-3 at 2). Plaintiff acknowledges, however, that "when [he] returned to SCI-Camp Hill, [his] injuries were photographed and documented." (Doc. 1 at 8).

Assuming, without deciding, that Plaintiff's medical needs were serious in the constitutional sense, the allegations in Plaintiff's complaint

clearly demonstrate that Plaintiff received medical attention, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Thus, Plaintiff's own admission averts any deliberate indifference with respect to treatment for his injury.

Specifically, Plaintiff states that he was immediately seen by Nurse Kelly Butler, who addressed and cleaned his wounds. At best, Plaintiff's complaint demonstrates his disagreement with the type of treatment rendered. This is particularly so in light of the fact that there are no allegations in the complaint that any of the Defendants, including Nurse Kelly Butler, intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer; Rouse. To the extent that Plaintiff claims that he should have been treated for a concussion (Doc. 1 at 8), there are no allegations that Plaintiff suffered a concussion. Thus, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence cannot serve as a predicate to liability under §1983,

24

Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable claim. See White, 897 F.2d at 108-110.

Finally, with respect to Plaintiff's claim that Nurse Butler did not photograph his wounds because she did not have a camera, the Court finds such allegation insufficient to support an Eighth Amendment deliberate difference claim, in light of Plaintiff's own admission that Nurse Butler tended to Plaintiff's immediate injuries. Moreover, Plaintiff admits that his wounds were documented by SCI-Camp Hill when he returned. Thus, the Court finds this claim meritless.

## V. __Conclusion__

For the reasons set forth above, the Court will grant the motion to dismiss Defendant Kelly Butler. Corrections Defendants' motion for summary judgment for Plaintiffs' failure to exhaust administrative remedies as to any claim against Defendants C/O Rodriguez, C/O Klinger, C/O Fritzinger, C/O Rauenzahn, Lt. Escalante, Warden Berdanier and Deputy Warden Wapinsky will be granted. Corrections Defendants' motion for summary judgment based on Plaintiff's Eighth Amendment medical claim will be granted. Corrections Defendants' motion for summary

judgment with respect to Plaintiff's failure to exhaust his Eighth Amendment excessive force claim against Defendants C/O Rainis, C/O Borger, C/O Sabol will be denied, and Plaintiff's excessive force claim will be permitted to proceed as to these Defendants.

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: September 30, 2021**
19-0101-01

26